## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

VICTOR S. PACHECO,

    **Plaintiff,**

    **v.**                                                   Civil No. 23-1279 (ADC)

XAVIER BECERRA, SECRETARY OF
THE UNITED STATES DEPARTMENT
OF HEALTH AND HUMAN SERVICES,

    **Defendant.**

## OPINION AND ORDER

Pending before the Court is the defendant, the United States Department of Health and Human Services' ("HHS") motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief could be granted. **ECF No. 8**. Plaintiff Victor S. Pacheco ("plaintiff") filed an opposition to the motion. **ECF No. 14**. HHS then filed a reply. **ECF No. 17**.

Having considered the above filings, and for the reasons stated below, the Court **GRANTS** HHS's motion to dismiss.

## I.    Procedural Background

On May 30, 2023, plaintiff filed a complaint against HHS Secretary Xavier Becerra in his representative capacity raising claims of gender and/or sex discrimination, retaliation, and hostile work environment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, Pub. L. 88-325, § 701 *et seq. See* Compl., **ECF No. 1**. Plaintiff alleges that Director Marisol

Faberlle, an official in the U.S. Food and Drug Administration ("FDA"), which is itself an agency of HHS, discriminated against him by terminating him from his employment because of his male gender, retaliated against him for filing an administrative complaint before the FDA's Office of Equal Employment Opportunity ("OEEO"), and created a hostile work environment. Specifically, plaintiff claims that he was wrongfully terminated from his position as chemist following an off-duty incident involving a female coworker. Plaintiff also clams that he was wrongfully terminated and that he is entitled to compensatory and punitive damages under 42 U.S.C. § 1981a. The discriminatory premise behind plaintiff's claims is that Director Faberlle treated him more unfavorably than his coworker because he is male, while she is female.

On September 1, 2023, HHS filed a motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief could be granted. *See* Mot. to Dismiss, **ECF No. 8**. HHS argues that plaintiff failed to make out a plausible claim for sex and/or gender discrimination insofar as the allegations, even taken as true, are insufficient to establish that he was terminated because of his sex or that the reason given by HHS was pretextual. *Id.*, at 9-14. HHS further argues that the hostile work environment claims are factually unsupported and, in any case, were not administratively exhausted. *Id.*, at 14-16. Lastly, HHS argues that plaintiff's retaliation claim fails because the alleged protected activity occurred after he was notified of HHS's proposal to terminate him and because there are no allegations pointing to any discriminatory animus or awareness of the protected activity by the deciding official, who HHS points out was not Director Faberlle. *Id.*, at 16-18. HHS attached to its motion the

termination proposal sent by Director Faberlle to plaintiff on April 27, 2022, plaintiff's formal administrative complaint dated June 27, 2022, and the FDA's notification of its final decision terminating his employment, dated September 7, 2022. *See* **ECF Nos. 8-1, 8-2,** and **8-3**. HHS asks that the Court consider these documents as part of the administrative record without conversion of its motion into one for summary judgment. **ECF No. 8** at 4 n. 1.

Plaintiff filed an opposition to the motion to dismiss on September 26, 2023. *See* Opp'n, **ECF No. 14**.[1] There, plaintiff relied on the allegations in the complaint to support his position that he has plausibly alleged that he was discriminated against because of his gender and/or sex. *Id.*, at 8-11. He further argued that he is entitled to discovery and that future summary judgment practice may ultimately "weed out any insubstantial claims and/or causes of action before trial." *Id.*, at 2, 3, and 11. Plaintiff attached to his opposition copies of the informal complaint he made on May 13, 2022, and his formal complaint dated June 27, 2022. **ECF Nos. 14-1** and **14-2**.

HHS filed its reply on October 18, 2023. *See* Reply, **ECF No. 17**. HHS there argued that plaintiff's opposition did little to remedy the lack of factual support for a plausible claim of sex-based disparate treatment or of hostile work environment. *Id.*, at 3-6. As to the latter, HHS highlighted the fact that neither plaintiff's informal nor formal administrative complaints

---

[1] The parties engaged in collateral motion practice on whether the Court should strike plaintiff's opposition and deem the motion to dismiss unopposed given his failure to file it on time or request an extension to do so before the deadline expired. *See* **ECF Nos. 10, 15** and **16**. Because the Court has found it useful to consider plaintiff's opposition to better delineate his position as to the sufficiency of his claims, it will exercise its discretion and hereby **DENIES** the motion to deem the motion to dismiss unopposed and the motion strike at **ECF Nos. 10** and **15**. Consequently, HHS' request for leave to file a reply at **ECF No. 15** is **GRANTED**. The request extension of time to do so is **MOOT** in light of **ECF No. 17**.

contained any mention of facts constituting a hostile work environment, which meant he had failed to exhaust administrative remedies. *Id.*, at 6-8. HHS further argued that the same holds for plaintiff's complaint here. *Id.* Finally, because both versions of the administrative complaint postdate the termination proposal, HHS reaffirmed its contention that plaintiff was not retaliated against for protected activity. *Id.*, at 8-10.

## II.    Legal Standard

When ruling on a motion to dismiss brought pursuant to Fed. R. Civ. P 12(b)(6), courts must "accept the truth of all well-pleaded facts and draw all reasonable inferences therefrom in the pleader's favor." *García-Catalán v. United States*, 734 F.3d 100, 102 (1st Cir. 2013) (quoting *Grajales v. P.R. Ports Auth.*, 682 F.3d 40, 44 (1st Cir. 2012)). "While detailed factual allegations are not necessary to survive a motion to dismiss for failure to state a claim, a complaint nonetheless must contain more than a rote recital of the elements of a cause of action… [and they] must contain sufficient factual matter to state a claim to relief that is plausible on its face." *Rodríguez-Reyes v. Molina-Rodríguez*, 711 F.3d 49, 53 (1st Cir. 2013) (cleaned up) (citing, *inter alia*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)). In order to perform this plausibility inquiry, the Court must "separate factual allegations from conclusory ones and then evaluate whether the factual allegations support a 'reasonable inference that the defendant is liable for the misconduct alleged.'" *Conformis, Inc. v. Aetna, Inc.*, 58 F.4th 517, 528 (1st Cir. 2023) (citing *Iqbal*, 556 U.S. at 678, and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "If the factual allegations in a complaint, stripped of conclusory legal allegations, raise no 'more than a sheer possibility that

a defendant has acted unlawfully,' the complaint should be dismissed." *Frith v. Whole Foods Mkt., Inc.*, 38 F.4th 263, 270 (1st Cir. 2022) (quoting *Rodríguez-Reyes*, 711 F.3d at 53, and *Iqbal*, 556 U.S. at 678). For example, if an "obvious alternative explanation" is supported by the same well-pleaded facts of the complaint, even when seen in the light most favorable to the pleader, then a complaint may very well fail to cross the threshold of plausibility. *Id.*, at 275 (citing *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 9 (1st Cir. 2011)). In sum, "[t]he relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint." *Ocasio-Hernández*, 640 F.3d at 13.

## III.   Plaintiff's Allegations

### A.  The Complaint.

As part of the required analysis, the Court will identify below the well-pleaded allegations in the complaint.

Plaintiff, who identifies as male, was employed as a General Schedule Series 1320, Grade 12 chemist in the FDA's San Juan Laboratory. **ECF No. 1** at 3, ¶ 7. The FDA is an agency of HHS, which is headed by Secretary Xavier Becerra. *Id.*, at 3, ¶ 8. His direct supervisor was Director Faberlle, who is female. *Id.*, at 4, ¶ 17. Plaintiff was issued a notice of proposed removal from federal service by Director Faberlle on April 27, 2022, charging him with engaging in conduct unbecoming of a federal officer. *Id*. at 4-5, ¶¶ 17, 21. The cause for the notice was an incident that occurred almost a year earlier, on May 5, 2021, and involved a female coworker ("Female

Coworker").[2] *Id.*, at 5, ¶ 21. Plaintiff alleges that during this incident, which took place off-duty and outside working hours and premises, fellow colleagues identified the Female Coworker as being possibly intoxicated because of excess alcohol consumption, and she was seen physically attempting to incite or seduce plaintiff in a public space, engaging in conduct such as biting his arm, reaching for his intimate parts, and displaying her underwear while crossing her legs over his. *Id.*, at 5-6, ¶¶ 21-22. Plaintiff alleges that Director Faberlle was aware of these eyewitness accounts but chose to selectively prosecute and terminate the plaintiff based on her own subjective criteria. *Id.*, at 5-6, ¶¶ 22-23. In addition, plaintiff alleges that the Female Coworker was similarly situated as him but was treated more favorably insofar as Director Faberlle did not propose to terminate her despite her conduct. *Id.*, at 5-6, ¶¶ 18, 24.

On May 13, 2022, plaintiff made initial contact with the FDA's OEEO. *Id.*, at 4, ¶ 16. On June 17, 2022, nearly two months after he received notice of the proposed termination proposal, plaintiff filed an *Individual Formal Complaint of Employment*, Discrimination Case No. HHS-FDAORASE-051-22, where he alleged gender (sex) based discrimination and retaliation, listing the unlawful conduct as non-sexual harassment, disciplinary action, and termination of employment. *Id.* That same day, plaintiff sent an email to Director Faberlle requesting that he be immediately reinstated from an involuntary administrative leave, but his request was not

---

[2] Because of the nature of the incident in question, and because it is unnecessary for the resolution of this matter, the Court will refrain whenever possible from using non-parties' names in this Opinion & Order.

granted. *Id.*, at 6-7, ¶ 26. Plaintiff's termination was made final on September 15, 2022. *Id.*, at 7, ¶ 27.

### B. Facts Included in Other Documents.

As mentioned above, attached to its motion to dismiss, HHS included the termination proposal sent by Director Faberlle to plaintiff on April 27, 2022 ("Notice of Proposed Removal"), plaintiff's formal administrative complaint dated June 27, 2022 ("Formal OEEO Complaint"), and the FDA's notification of its final decision terminating his employment, dated September 7, 2022 ("Notice of Final Decision"). *See* **ECF Nos. 8-1, 8-2,** and **8-3**, respectively. HHS requests that the Court take these documents into account as "excerpts of the administrative record without conversion to a motion for summary judgment" because "[p]laintiff's allegations necessarily rely on them, and they are central to [p]laintiff's claims." **ECF No. 8** at 4 n.1. Plaintiff did not oppose said request or object to the authenticity of said records; in fact, plaintiff himself submitted a copy of his informal OEEO complaint dated May 13, 2021 ("Informal OEEO complaint"), **ECF No. 14-1**, and re-filed defendant's copy of his Formal OEEO Complaint as an exhibit to his opposition, **ECF No. 14-2**. Because these four documents—namely, the April 27 Notice of Proposed Removal, the May 13 Informal OEEO Complaint, the June 27 Formal OEEO Complaint, and the September 7 Final Decision on Removal—are both integral to plaintiff's claims and sufficiently referred to in the complaint, the Court will consider these documents as incorporated into the complaint. *Flores v. OneWest Bank, F.S.B.*, 886 F.3d 160, 167 (1st Cir. 2018); *Clorox Co. Puerto Rico v. Proctor & Gamble Com. Co.*, 228 F.3d 24, 32 (1st Cir. 2000); *see also Villamía*

*v. MVP Auto Corp.*, 433 F. Supp. 3d 261, 265 (D.P.R. 2020) (considering part of administrative file appended to Rule 12(b)(6) motion to dismiss under same justifications). That said, these documents will not be considered to test the veracity of plaintiff's allegations, only to test their plausibility.

### 1. The Notice of Proposed Removal.

The Notice of Proposed Removal dated April 27, 2022, and signed by Director Faberlle, provides a detailed factual justification for the FDA's proposed termination of plaintiff, which the Court summarizes below.

On May 5, 2021, plaintiff and four other FDA employees were at a local restaurant in San Juan, Puerto Rico, where the Female Coworker and others consumed alcoholic beverages. Plaintiff did not consume alcohol with exception of "one sip." On the other hand, one witness reported that the Female Coworker was "all over the place" and "blacked out," and she exhibited unusual behavior, including biting plaintiff on the ears and groping him, as well as vomiting on the table and then again outside of the restaurant. According to witnesses, including plaintiff, she was under the influence of alcohol and not in full control of her mental faculties. *See* **ECF No. 8-1** at 1.

The Notice of Proposed Removal then lays out three separate "specifications." Specification "A" states that after leaving the restaurant, plaintiff drove the Female Coworker to his home in San Juan, but around 9:00pm, he had sexual intercourse with her in his car near a colleague's apartment. The Female Coworker later told plaintiff that she had no recollection

of having sexual intercourse with him and that his actions were deeply disturbing to her. The notice concludes that "[b]y engaging in sexual activity with a co-worker who was incapable of consent, [plaintiff] engaged in conduct unbecoming a federal employee." *Id.*, at 1-2.

Specification "B" relates that around 9:03pm, after repeated requests from a male colleague, plaintiff drove the Female Coworker to his colleague's apartment "and dropped her off alone, intoxicated, and partially dressed, as [plaintiff] stated that she was not wearing underwear." Plaintiff knew that this colleague had also been drinking that night. The notice concludes that plaintiff "placed a vulnerable employee in a volatile situation. [Plaintiff's] conduct was unbecoming when [he] drove [the Female Coworker] in this condition to the home of another employee who had also been drinking instead of making arrangements to have her taken to her own home or to obtain medical attention." *Id.*

Specification "C" further details how plaintiff returned to his colleague's apartment at around 10:12pm after receiving calls from the Female Coworker stating that she needed him "to come get her." When plaintiff arrived at the colleague's apartment, he found the Female Coworker in a state of undress, wearing only his colleague's unzipped jacket, which alarmed plaintiff. He took the Female Coworker to his colleague's bedroom. His colleague later reported that he could hear sounds of sexual activity coming from the room. Plaintiff took a shower naked with the Female Coworker in the colleague's bathroom. The notice concludes that plaintiff "took advantage of a vulnerable co-worker who was intoxicated, unwell, and incapable of consenting to sexual contact. This conduct is unbecoming of a federal employee." *Id.*

The notice states that in proposing termination, Director Faberlle considered several factors, including the following: the nature and seriousness of the offense, plaintiff's job level and type of employment, his past disciplinary record, the available penalties for the offense, its effect on his ability to perform his work under a supervisor, his past work record, the consistency of removal as a penalty for the same or similar offenses, plaintiff's potential for rehabilitation, and the adequacy and effectiveness of alternative sanctions, among others. *See id.*, at 2-5. The notice informed plaintiff of his right to reply and that the "Deciding Official" would be Kim Thomas-Cruse, Deputy Associate Director, Office of Medical Products and Specialty Laboratory Operations. *Id.*, at 6. The notice was signed by Director Faberlle and was acknowledged as received by plaintiff on April 27, 2022. *Id.*, at 7.

### 2.  Plaintiff's OEEO Complaints.

On May 13, 2022, plaintiff filled out an Informal EEO Complaint. **ECF No. 14-1**.[3] There, he identified the alleged discrimination he suffered as "Disciplinary Action" in the form of "Notice of Removal," and as "Harassment (non-sexual)." *Id.*, at 1. He further specified the basis of the alleged discrimination as "Sex" (specifying his gender identity as "Male") and retaliation. *Id.*, at 2. Plaintiff summarized his claim as follows:

> I was issued a notice of propose[d] removal from federal service by Marisol Faberlle, Laboratory Director (female) on April 27, 2022. Similarly situated female employee [the Female Coworker] was treated more favorably and was not issued a notice of propose[d] removal. Baseless charge was used which is un sup[p]orted

---

[3] Plaintiff listed his counsel of record, attorney Humberto Cobo-Estrella, as his representative in the complaint. **ECF No. 14-1** at 1.

by the evidence including [the Female Coworker's] interview. I was subjected to
gender discrimination based on subjective criteria.

*Id.* Plaintiff requested that the "notice of propose[d] removal be remove[d] and [his] record
expunge[d] and that [he] be transfer[red] to a different facility especifically [sic] Atlanta,
Georgia." *Id.*

On June 27, 2022, plaintiff filed a Formal OEEO Complaint with the FDA's OEEO, Agency
Case No. HHS-FDAORASE-051-22. **ECF No. 8-2**; *see also* **ECF No. 14-2** (plaintiff's copy). There,
plaintiff states that he had received a "Notice of Final Interview/Notice of Right to File a
Discrimination Complaint" days earlier, on June 16, 2022. **ECF No. 8-2** at 1. In his formal
complaint, plaintiff wrote that the then most recent or last alleged discriminatory/retaliatory
incident occurred on May 20, 2022. *Id.*, at 3.[4] He again named Director Faberlle as the person he
believed discriminated against him. *Id.* As in the Informal OEEO Complaint, plaintiff specified
that the basis for the alleged discrimination were "sex" and "retaliation/reprisal," and listed the
issues as "harassment (non-sexual)," "termination/removal/separation," and "disciplinary
action." *Id.* The summary of the claim is identical to that of the informal complaint, and the
requested remedy only varies in that plaintiff requested transfer to "the compliance branch in
the San Juan District or to the Southeast Regional Laboratory in Atlanta, Georgia." *Id.*, at 4-5.

---

[4] This likely refers to plaintiff being placed on administrative leave on this date. *See* **ECF No. 8-3** at 1 ("I considered
that you are currently on administrative leave as of May 20, 2022.").

### 3.  The Notice of Final Decision.

The Notice of Final Decision on the proposed removal dated September 7, 2022, is signed by Deciding Official Kim Thomas-Cruse and was sent to plaintiff via next-day/overnight mail. **ECF No. 8-3**. There, the Deciding Official recounted how plaintiff requested and was granted the opportunity to present an oral reply in response to the charge in the Notice of Proposed Removal, which was given on June 7, 2022, and in which plaintiff's representative (his counsel of record here) argued on his behalf. *Id.*, at 1-2.[5] After summarizing the arguments on reply, the Deciding Official sustained the charge that plaintiff engaged in conduct unbecoming of a federal officer as to all three specifications listed in the Notice of Proposed Removal.

As to specification "A," the Deciding Official noted that plaintiff acknowledged that he "engaged in sex with [the Female Coworker] on May 5, 2021, but [he] claim[ed that the] sexual interaction was consensual." *Id.*, at 2. The Deciding Official then noted that plaintiff himself had admitted that the Female Coworker was "extremely intoxicated and acting 'disorderly'… As such, her capacity to engage in sex was significantly diminished, if not nonexistent." *Id.* As to the claim that the Female Coworker had made "inappropriate advances" when leaving the restaurant, the Deciding Official reasoned that "even if true, this did not give [plaintiff] license to engage in sex with an extremely intoxicated fellow employee who [he] knew to be behaving erratically and unable to control of [sic] her behavior." *Id.* The Deciding Official also notes that, because plaintiff was not intoxicated, he was "in a position to know better." *Id.* In response to

---

[5] The particulars of plaintiff's reply arguments appear in summarized form. *See* **ECF No. 8-3** at 2.

plaintiff's argument on reply that the conduct had nothing to do with his workplace duties, the Deciding Official disagreed, stating that the conduct had "a nexus to the workplace and efficiency of service. [The Female Coworker] is a fellow coworker with whom [plaintiff] would interact on a regular basis while at work. [Plaintiff's] engaging in nonconsensual sexual activity with her undermines her ability to feel safe at work and [his] trustworthiness as an employee." *Id.*, at 3.

As to specification "B", the Deciding Official noted that plaintiff's reply failed to address the facts charged under this specification and that plaintiff admitted to the described conduct. *Id.* The Deciding Official expressed that she was "perplexed as to how one would leave a vulnerable fellow employee, someone [plaintiff] described as a friend," in his colleague's apartment knowing that he had also been drinking and had been acting inappropriately. *Id.*

And as to specification "C," the Deciding Official also noted that plaintiff's reply failed to address or dispute the facts charged under this specification. *Id.*, at 4. Further, the Deciding Official noted that plaintiff had admitted to leading the Female Coworker to his colleague's bedroom and taking a shower with her even after being alarmed at the condition he found her in. *Id.* The Deciding Official noted plaintiff's denial to having sex with the Female Coworker at this point, but also noted his general acknowledgement that he did have sex with her, which led her to conclude, "given the evidence," that he "very likely engaged in sexual activity" with the Female Coworker in his colleague's apartment. *Id.* The Deciding Official further noted that the

Female Coworker was "unaware [they] had sex… until [plaintiff] told her, which… was shortly after [plaintiff] learned she had submitted to a rape examination." *Id.* She then concluded:

> I cannot reconcile why [plaintiff] did not immediately remove [the Female Coworker] from [his colleague's] apartment particularly given her intoxication and after seeing her in such a vulnerable condition…. [S]he contacted [plaintiff] specifically to ask that [he] help her leave the apartment. Despite seeing her in this condition, [plaintiff] chose to stay in the apartment, shower naked with her and engage in sex wit her. I find [plaintiff's] conduct highly disturbing, reprehensible, and unbecoming of a federal employee."

*Id.*

The Deciding Official then considered the same factors that Director Faberlle did and found that removal was appropriate. The Deciding Official's findings as to these factors include the following:

- "It is hard to conceive of misconduct more serious than described here." *Id.*, at 5.

- "[A]s a result of [plaintiff's] misconduct, the laboratory was forced to make arrangements to assure that [plaintiff and the Female Coworker] were not in the laboratory at the same time…. [T]his has negatively affected the efficiency of the laboratory." *Id.*

- "I can no longer trust [plaintiff] to make ethical and reasonable decisions in the workplace, especially as they concern [his] conduct with other colleagues." *Id.*

- "[B]ecause of this incident, [plaintiff's] work schedules and duties have had to be adjusted… [Plaintiff's] misconduct has also led to inefficiencies since management must constantly employ measures to assure [his] distance but balance the need for [his] physical presence to perform [his] analytical duties. [Plaintiff's] supervisor, and management are unnecessarily and inescapably fettered as a result of [his] misconduct…." *Id.*, at 6.

- The misconduct… has resulted in limits to the Agency that make it unreasonably difficult to efficiently assign work to [plaintiff]." *Id.*

- "Despite [plaintiff's] misconduct, [he] did not express a willingness to accept any personal responsibility… [Plaintiff] portray[s] [him]self as the victim and asserted that [the Female Coworker] was the aggressor." *Id.*, at 7.

- "I considered your discussion related to having had sex previously: one time in 2018. I considered [that] prior sexual activity from three (3) years previous, does not replace consent, and [the Female Coworker,] even if the aggressor, was not able, based on [plaintiff's] testimony and hers, to provide consent…. There was also nothing that mitigated the fact that [plaintiff] took [the Female Coworker] in her intoxicated state to the home of another employee, who was also intoxicated, and where she was sexually assaulted." *Id.*

The Deciding Official then informed plaintiff of his right to appeal the decision to arbitration, the Merit System Protection Board, or to file a complaint before the OEEO or as a whistleblower to the Office of Special Counsel. *Id.*, at 7-10.

## IV.    Discussion

The disposition of HHS' motion to dismiss requires little more than the application of the plausibility standard to the few well-pleaded allegations in the complaint in light of the incorporated documents. First, the information included in the Notice of Proposed Removal and the Final Decision on Removal provides an obvious and nondiscriminatory alternative explanation for HHS' actions, for which reason plaintiff fails to state a claim for disparate treatment because of his sex. Second, plaintiff's claim for hostile work environment was not administratively exhausted and lacks supporting factual allegations. Third, as per the complaint, plaintiff fails to state a claim for retaliation as it is clear that the complained-of adverse employment action, even if not final, came prior to plaintiff engaging in protected conduct.

In addition, the Court addresses below plaintiff's third cause of action for punitive damages and wrongful termination.

### A. Plaintiff fails to state a plausible claim for disparate treatment based on his sex and/or gender because the claim lacks factual support.

Pursuant to Section 717 of Title VII, the law's anti-discrimination protections apply to federal employees. 42 U.S.C. § 2000e-16(a) ("All personnel action affecting employees… in executive agencies as defined in [5 U.S.C.§ 105]… shall be made free from any discrimination based on race, color, religion, sex, or national origin."). Thus, Title VII applies the same restrictions on federal employers as it does on private employers. *Morales-Vallellanes v. Potter*, 605 F.3d 27, 35 (1st Cir. 2010) (citing *George v. Leavitt*, 407 F.3d 405, 411 (D.C. Cir. 2005)). Accordingly, a federal agency may not terminate a federal employee because of that person's sex or gender.

Plaintiff's discrimination claim is a disparate treatment claim—"where an employer has treated a particular person less favorably than others because of a protected trait." *Ricci v. DeStefano*, 557 U.S. 557, 557 (2009) (cleaned up). "A disparate-treatment plaintiff must establish that the defendant had a discriminatory intent or motive for taking a job-related action." *Id.* (cleaned up). Plaintiff alleges that the Female Coworker was "similarly situated" because she was "also a Chemist" and "treated more favorably by defendant, specifically by" Director Faberlle, who "did not issue a similar notice of proposed removal/termination to [her]… despite her public display of intoxication, in the presence of fellow employees, and unwelcome physical

contact with the plaintiff, in a public setting." **ECF No. 1** at 6, ¶ 24. Plaintiff claims that this disparate treatment was due to him not being a woman. *Id.*, at 7-8, ¶¶ 33-34, 36. He also claims that the reasons given for his removal were pretextual and meant to hide a discriminatory animus against him for being male. *Id.*, at 7, ¶¶ 30, 32.

HHS argues in its motion to dismiss that the complaint fails to plausibly allege the existence of a discriminatory animus behind his removal. It first argues that the complaint's only references to the existence of such animus are "conclusory," "formulaic recitations," or "naked assertions devoid of further factual enhancement." **ECF No. 8** at 10. HHS singles out the numerous bare assertions in the complaint of plaintiff being subjected to "gender discrimination," "disparate treatment," "selective prosecution because of his gender," "discrimination on gender," and "adverse action by reason of his gender." *Id.* (quoting **ECF No. 1** , at ¶¶ 1, 15, 30, 34).

Second, HHS points the Court towards the "only 'factual' allegation" supporting a sex-based reason for his removal: that the Female Coworker was treated more favorably than him because she was not terminated despite being involved in the May 5, 2021 incident. *Id.*, at 10. HHS argues that plaintiff's disparate treatment claim is entirely speculative precisely because it rests solely on this factual allegation. *Id.*, at 11. Plaintiff's response is to list several passages from his complaint, which he contends lend sufficient factual support to his claim. **ECF No. 14** at 8-11. Of all the averments that plaintiff refers to, the only non-conclusory ones are those that point out that the Female Coworker was treated more favorably than him despite having engaged in

unbecoming behavior, and that she did not testify that plaintiff engaged in improper conduct.

**ECF No. 1** at 5-6, ¶¶ 18, 21-24.

The Court agrees with HHS that the complaint is rife with sterile and unadorned claims of discrimination that lack factual support. Even taking plaintiff's only two non-conclusory allegations as true, the Court cannot conclude that plaintiff has set out a plausible claim that he was discriminated against because of his sex and/or gender.

For starters, there is an "obvious alternative explanation" for plaintiff's termination that is "just as much in line with" these allegations. *Frith*, 38 F.4th at 276 (quoting *Ocasio-Hernández*, 640 F.3d at 9). HHS' decision to terminate him but not the Female Coworker is equally (or more) consistent with a non-discriminatory explanation: HHS found, after an internal investigation, that plaintiff had taken advantage of the Female Coworker by engaging in sexual intercourse when she was in such a heavily intoxicated and vulnerable state that she could not have been able to consent. To compound matters, HHS found that plaintiff placed the Female Coworker in the care of an intoxicated colleague, leaving her at his apartment at the colleague's insistence, and then found her in an alarming state of undress when he answered her call to pick her up. HHS further found that, instead of removing the Female Coworker from the situation in which he placed her, he instead took a shower with her and possibly engaged in a second act of sexual intercourse in his colleague's apartment. HHS concluded from its findings that plaintiff had engaged in conduct unbecoming a federal officer and, after a review of several factors including

how plaintiff's conduct would affect agency functions, that the appropriate penalty was removal.

Without diminishing the seriousness of the conduct allegedly exhibited by the Female Coworker as described by plaintiff, the reasons for which he was removed were plainly spelled out in both the Proposed Notice of Removal and the Final Decision on Removal. These reasons have nothing to do with plaintiff's sex and/or gender but rather with the seriousness of his conduct the night of the incident, the unfeasibility of maintaining him in his current position due to the inefficiencies and operational complications that would result, and his failure to acknowledge responsibility for his actions.[6]

In addition, the fact that the Female Coworker did not testify as to plaintiff's conduct is not a persuasive basis on which to infer discrimination. Director Faberlle appears to have

---

[6] *See, e.g.*, **ECF No. 8-1** at 2 ("I have considered the nature and seriousness of the offenses cited above, and its/their relation to your duties, position, and responsibilities…"); at 3 ("In order to ensure the productivity, safety, and morale in the workplace, I was required to change [plaintiff's] work schedules so that [he] and [the Female Coworker] are not in the laboratory at the same time… Furthermore, the laboratory does not have enough room to facilitate physical separation between [them]."); and at 4 ("The separation implemented between [plaintiff] and [the Female Coworker] is placing a burden on [plaintiff's] co-workers because neither of [them] can review each other['s] work. Furthermore, to ensure separation [plaintiff] cannot review work performed by a team where [the Female Coworker] is a member, and likewise [the Female Coworker] cannot review work from a team where [plaintiff] is a member."). *See also* **ECF No. 8-3** at 4 ("I considered the nature and seriousness of the offenses and their relations to your duties, positions, and responsibilities…"); at 6 ("[Plaintiff's] work schedules and duties have had to be adjusted so [that he was] not performing work in the laboratory while [the Female Coworker] was present. [Plaintiff's] misconduct has also led to inefficiencies since management must constantly employ measures to assure [plaintiff's] distance but balance the need for [his] physical presence to perform [his] analytical duties."); and at 7 ("Despite [plaintiff's] misconduct, [he] did not express a willingness to accept any personal responsibility for the activities of May 5, 2021. [Plaintiff] portray[s] [him]self as the victim and asserted that the [Female Coworker] was the aggressor.").

considered the testimony of other coworkers.[7] The same goes for the Deciding Official, who, in

addition, repeatedly used plaintiff's own admissions to substantiate her decision.[8] And the

Court notes that there is a very reasonable explanation for why the Female Coworker did not

testify as to plaintiff's conduct: she could not remember the events of the incident given her

severe state of intoxication.[9]

In contrast to the above, plaintiff's claim that Director Faberlle discriminated against him

because of his sex and/or gender is entirely speculative. "While it is true that Title VII 'protects

men as well as women'... the statute does not insulate men from any and all adverse

employment actions." *Watts v. Lyon Cnty. Ambulance Serv.*, 597 F. App'x 858, 860 (6th Cir. 2015)

(quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78, (1998)). Invoking the mantra of

discrimination without any factual support is not enough to state a plausible claim.

---

[7] *See*, *e.g.*, **ECF No. 8-1** at 1 ("According to the testimony of witnesses…); and 2 ("One witness reported….)).

[8] *See*, *e.g.*, **ECF No. 8-3** at 2 ("You [i.e., plaintiff] acknowledge that you engaged in sex with [the Female Coworker] on May 5, 2021, but you claim your sexual interaction was consensual. However, by your admission, [the Female Coworker] was extremely intoxicated… you and other witnesses have stated that you did not drink alcohol on this date, except for a 'sip' of a Margarita, and was [sic] not intoxicated."); at 3 ("You acknowledge that while in [plaintiff's colleague's] apartment, [the colleague] engaged in inappropriate sexual activity with [the Female Coworker]."); and at 4 ("…you admitted during your interview with OIA investigators that you observed [the Female Coworker] practically nude when you entered [plaintiff's colleague's] apartment on May 5, 2021, and that you were surprised to find her in this condition. You also acknowledged that you, thereafter, led or accompanied [the Female Coworker] to [plaintiff's colleague's] bedroom and later to the bathroom, where you took a shower with her.").

[9] *See* **ECF No. 8-1** at 2 (The Female Coworker "testified that she had no recollection of having sexual relations with [plaintiff] and she was very upset when [he] later informed her that [plaintiff] had sex with her that evening."); **ECF No. 8-3** at 4 (Plaintiff "acknowledged that because she was intoxicated, she was unaware [plaintiff] had sex with her until [he] told her, which I note was shortly after [plaintiff] learned she had submitted to a rape examination.").

In sum, the Court cannot draw a reasonable inference from the well-pleaded allegation of the complaint that plaintiff's termination was taken because of his sex and/or gender. HHS has proposed an obvious and non-discriminatory alternative explanation that is just as (or more) plausible than plaintiff's allegations of discrimination. Under these circumstances, it would not be reasonable for the Court to draw an inference of liability. The Court finds that plaintiff's allegations fail to state a discrimination claim for disparate treatment. *Frith*, 38 F.4th at 275.[10]

**B. Plaintiff fails to state a claim for discriminatory hostile work environment because he failed to exhaust administrative remedies and because the claim lacks factual support.**

As a condition precedent to filing a suit in federal court under Title VII, a plaintiff must usually first exhaust administrative remedies. *See Franceschi v. U.S. Dep't of Veterans Affs.*, 514 F.3d 81, 85 (1st Cir. 2008); *Reynoso v. DeJoy*, No. CV 21-1566 (FAB), 2023 WL 2232107, at *3 (D.P.R.

---

[10] In addition, even taking as true that the Female Coworker also engaged in unbecoming conduct prior to plaintiff's actions, the Court has difficulty accepting the premise that she is similarly situated with respect to plaintiff. They may both be chemists and may have both been involved in the same incident, but plaintiff, without being intoxicated, was found to have engaged in sexual activity with a visibly and significantly intoxicated Female Coworker, who was evidently unable to consent. He was further found to have left her in this vulnerable state in the hands of a colleague, received a call from her to pick her up, and then proceeded to take a shower with her and possibly engage in further sexual activity. No matter which way one looks at it, the seriousness of this conduct is miles apart from that which plaintiff imputes to the Female Coworker. As the First Circuit recently reaffirmed:

> [t]he test is whether a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated. Much as in the lawyer's art of distinguishing cases, the "relevant aspects" are those factual elements which determine whether reasoned analogy supports, or demands, a like result. Exact correlation is neither likely nor necessary, but the cases must be fair congeners. In other words, apples should be compared with apples.

*Diaz v. City of Somerville*, 59 F.4th 24, 32 (1st Cir. 2023) (quoting *Dartmouth Rev. v. Dartmouth Coll.*, 889 F.2d 13, 19 (1st Cir. 1989), *overruled on other grounds by Educadores Puertorriqueños en Acción v. Hernández*, 367 F.3d 61 (1st Cir. 2004)) (alteration in original). In this sense, plaintiff "invites [the Court] to compare apples to apricots," *id.*, at 33, an invitation which the Court declines.

Feb. 27, 2023) (citing *Jensen v. Frank*, 912 F.2d 517, 520 (1st Cir. 1990) and additional authorities).

"Consequently… in employment discrimination cases, the scope of [a subsequently filed] civil complaint is… limited by the charge filed… and the investigation which can reasonably be expected to grow out of that charge." *Lattimore* 99 F.3d 456, 464 (1st Cir. 1996) (cleaned up). The plaintiff needs to "describe the essential nature of the claim and to identify the core facts on which it rests." *Id.*

Under Title VII, "plaintiffs may establish a violation… by demonstrating that an employer required them to work in a hostile or abusive environment." *Franchina v. City of Providence*, 881 F.3d 32, 45 (1st Cir. 2018) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). Such an environment is created when "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris*, 510 U.S. at 21 (cleaned up). A successful hostile work environment claim must show that:

> [t]he challenged conduct… be both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the plaintiff in fact did perceive it to be so. In performing this inquiry, a court must mull the totality of the circumstances, including factors such as the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfered with an employee's work performance.

*Maldonado-Cátala v. Mun. of Naranjito*, 876 F.3d 1, 10 (1st Cir. 2017) (cleaned up); *see also Rivera-Rivera v. Medina & Medina, Inc.*, 898 F.3d 77, 91 (1st Cir. 2018). And moreover, "an employee claiming harassment must demonstrate that the hostile conduct was directed at [her] because of

a characteristic protected by a federal anti-discrimination statute." *Rivera-Rivera*, 898 F.3d at 94 (quoting *Quiles-Quiles v. Henderson*, 439 F.3d 1, 7-8 (1st Cir. 2006)) (brackets in original).

HHS argues that plaintiff's hostile work environment claim fails because it was not administratively exhausted and because the complaint lacks any facts suggesting that plaintiff was subjected to a hostile work environment. **ECF No. 8** at 14-16. Plaintiff responds only to the first of these arguments and points out that his OEEO Complaints did not provide a specific option to state a hostile work environment claim but that it should nevertheless be understood to be included within his assertion that he was subject to "harassment." **ECF No. 14** at 1. On reply, HHS rebuts this argument by pointing to the OEEO Complaints' narrative sections, where plaintiff does not include any facts which could be construed as meeting any of the elements of a hostile work environment claim. **ECF No. 17** at 7.

HHS is correct, both on the exhaustion and the sufficiency questions. Neither plaintiff's administrative complaints nor the complaint in this case contain sufficient factual allegations to sustain a hostile work environment claim. The administrative complaints' narrative sections merely state that he was subjected to gender discrimination because Director Faberlle proposed his removal but not the Female Coworker's. **ECF No. 14-1** at 2; **ECF No. 14-2** at 4. An investigation into that claim cannot reasonably be expected to examine whether "the workplace is permeated with discriminatory intimidation, ridicule, and insult," but rather whether there was discriminatory intent behind Director Faberlle's decision. And plaintiff's mere marking of "harassment" as one of the issues involved in his administrative complaints cannot be

considered to encompass a hostile work environment claim. Plaintiff, who was assisted by counsel during this process, had a duty to "describe the essential nature of the claim and to identify the core facts on which it rest[ed]." *Lattimore*, 99 F.3d at 464. He failed to do so.

Further, as with plaintiff's disparate treatment claim, the Court cannot conclude from the allegations in the complaint here that he was subjected to a hostile work environment because of his sex and/or gender. Without more, merely being subjected to the internal disciplinary process resulting from the May 5, 2021 incident is not equivalent to being subjected to a hostile work environment. Neither can the Court credit the barebones allegations that Director Faberlle had made discriminatory comments against men or that other female employees had been treated more leniently. **ECF No. 1** at 8, ¶¶ 36-37. These are wholly conclusory allegations. While plaintiff certainly need not plead all of the elements of his claim, he cannot rely on unadorned allegations like these. *Rodríguez-Reyes*, 711 F.3d at 53.  Simply put, they are insufficient to push plaintiff's hostile work environment claim into the realm of plausibility.

### C. Plaintiff fails to state a retaliation claim because the protected conduct followed the adverse employment action.

Section 704 of Title VII makes it unlawful "for an employer to discriminate against any of his employees… because [the employee] has opposed any practice made an unlawful employment practice by this subchapter[.]" *Franchina*, 881 F.3d at 45 (quoting 42 U.S.C. § 2000e-3(a)) (alterations in original). To state a retaliation claim, the complaint "must contain plausible allegations indicating that the plaintiff opposed a practice prohibited by Title VII and suffered

an adverse employment action as a result of that opposition." *Morales-Cruz v. Univ. of Puerto Rico*, 676 F.3d 220, 226 (1st Cir. 2012). Opposing an unlawful employment practice includes having "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing" under Title VII. 42 U.S.C. § 20000e-3(a).

The Court finds it useful to review the typical elements of a retaliation claim. To state a *prima facie* retaliation claim, a plaintiff "must demonstrate 'that (1) [they] engaged in protected conduct; (2) [they were] subjected to an adverse employment action; and (3) the adverse employment action is causally linked to the protected conduct.'" *Frith*, 38 F.4th at 276–77 (quoting *Rivera-Rivera* 898 F.3d at 94) (alterations in original). Plaintiffs, however, "need not establish all elements of the prima facie case in their complaint. They must simply allege facts that give rise to a plausible inference that retaliation occurred." *Id.* (citing *Garayalde-Rijos v. Mun. of Carolina*, 747 F.3d 15, 24 (1st Cir. 2014)). Nonetheless, that does not mean that the Court cannot consider whether the elements of a *prima facie* case are plausibly alleged. They "remain relevant to [the] plausibility assessment, as those elements are part of the background against which a plausibility determination should be made." *Carrero-Ojeda v. Autoridad de Energía Eléctrica*, 755 F.3d 711, 718 (1st Cir. 2014) (cleaned up).

Plaintiff's allegedly protected conduct was "initiating a complaint to US FDA about gender discrimination and workplace harassment by a female supervisor, *prior* to the employer initiating his selective prosecution for termination." **ECF No. 1** at 11, ¶ 45. He alleges that "[s]hortly after plaintiff filed the EEOC charge to report unlawful gender discrimination, his

employer's supervisors selectively *chose* to wrongfully terminate his employment." *Id.* He unambiguously states that his complaint was "a motivating factor for subsequent adverse employment action." *Id.*, at 11, ¶ 47.

HHS argues in its motion to dismiss that plaintiff's retaliation claim fails to plausibly allege a causal connection with his termination. *See* **ECF No. 8** at 16-18. HHS relies on several First Circuit cases to establish that if the already contemplated adverse action (*i.e.*, the Notice of Proposed Removal) preceded the protected conduct (*i.e.*, the filing of a discrimination complaint), there can be no causation. *Id.* (citing *Nieves-Borges v. El Conquistador Partnership, L.P., S.E.*, 936 F.3d 1, 11 (1st Cir. 2019); *Miceli v. JetBlue Airways Corp.*, 914 F.3d 73, 85 (1st Cir. 2019); *Pearson v. Mass. Bay Trans. Auth.*, 723 F.3d 36, 42 (1st Cir. 2013); *Muñoz v. Sociedad Española De Auxilio Mutuo y Beneficiencia de Puerto Rico*, 671 F.3d 49, 56 (1st Cir. 2012); and *Sabinson v. Trustees of Dartmouth Coll.*, 542 F.3d 1, 5 (1st Cir. 2008)). Plaintiff's only rebuttal to this argument was to highlight that his May 13, 2022 Informal OEEO Complaint came before the September 7, 2022 Final Decision on Removal. **ECF No. 14** at 1-2.

HHS is correct in fact and law, as well as common sense. Both plaintiff's Informal and Formal OEEO Complaints were filed weeks *after* he received the Notice of Proposed Removal. His engagement in protected conduct could not have been the cause of the allegedly discriminatory action because the decision to initiate removal proceedings against him, even if merely contemplated, was taken before he lodged any discrimination claim. Causality flows forwards, not backwards. The logical inference from these allegations is that it was plaintiff who

filed his retaliation claim because he became aware that HHS intended to remove him from his employment, not the other way around.

Even framing the issue differently, and considering, for the sake of argument, that plaintiff's listing of "harassment" in his Informal OEEO Complaint referred to some unspecified discriminatory acts apart from having been notified of his proposed removal, the complaint and the documents here reviewed are completely bereft of factual support for any such claim. And if plaintiff intended to have the Court consider being subject to an administrative proceeding as factual evidence of sexually discriminatory harassment, he failed to develop any such argument in his opposition. *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").[11]

In sum, nothing in the complaint or in the documents submitted to the Court suggest the existence of any plausible factual allegation of harassment, and therefore, the only discriminatory action that is alleged to have taken place is Director Faberlle's notification that the FDA intended to initiate removal proceedings against plaintiff via the Notice of Proposed Removal. That action preceded the protected conduct. For this reason, the complaint fails to state a plausible claim for retaliation.

---

[11] Nor would the Court be inclined to consider any such allegations as plausible because, as previously explained, the "obvious alternative explanation" for the investigation on plaintiff's conduct is that the Female Coworker suffered through a sexual assault at the hands of fellow agency employees, a matter which HHS had a duty to investigate and address.

### D. Plaintiff's request for punitive damages and claim for wrongful termination.

Finally, the Court addresses plaintiff's third cause of action. Plaintiff requests "compensatory and punitive damages" pursuant to 42 U.S.C. § 1981(a)(1) because of his disparate treatment by the FDA in violation of Title VII. **ECF No. 1** at 11, ¶ 50. While HHS did not address this specifically in its motion, it did state in its reply that this request is not a separate cause of action. **ECF No. 17** at 8 n. 1.

The Court agrees with HHS. Because plaintiff failed to state a plausible disparate treatment claim, his accessory request for damages under 42 U.S.C. § 1981(a)(1) necessarily fails.

However, plaintiff also alleged "wrongful termination of his federal employment, and files[d] this complaint in this Federal District Court, pursuant to 29 C.F.R. § 1614.310." **ECF No. 1** at 11 ¶ 51. Again, HHS did not argue in its motion specifically as to this claim but did state in its reply that the cited regulation applies to "scenarios different from this case, namely following a mixed-case complaint involving the Merit System Protection Board." **ECF No. 17** at 8 n. 1.

Here, the Court considers that the complaint does not adequately state a claim for judicial review of HHS' administrative decision to remove him from his federal employment. As seen throughout the discussion above, plaintiff's claims are that he was discriminated against on the basis of his sex and/or gender. That is a Title VII claim. On the other hand, there is minimal indication that plaintiff seeks a review of the merits behind his removal. Admittedly, at some points in his complaint, plaintiff refers to FDA's decision to remove him as being premised on "baseless allegations." However, all references to this are within the context of his disparate

treatment, retaliation, and hostile work environment claims, not as a request to directly review the merits of the decision. *See* **ECF No. 1** at 1 ¶ 3, at 5 ¶¶ 19-20, at 7-8 ¶ 33, and at 9 ¶ 42.

In addition, there are no sufficient allegations for the Court to establish that plaintiff meets the requirements to invoke the right to file a civil action under 5 U.S.C. § 7702 as provided for in the cited regulation—that is, that he is "an individual who has a complaint processed pursuant to 5 C.F.R. part 1201, subpart E or [29 C.F.R. part 1614, subpart C]" and is entitled to file a civil action under 5 U.S.C. § 7702. *See* 29 C.F.R. § 1614.310. The Court cannot ascertain from the perfunctory allegations in the complaint (nor from plaintiff's opposition to the motion to dismiss) whether plaintiff's case falls under these specific regulations or whether he met the specific sub-requirements thereunder.

Therefore, the Court finds that plaintiff's third cause of action fails to state a claim upon which relief can be granted.

**V.    Conclusion**

For the reasons stated above, the Court **GRANTS** the motion to dismiss the complaint filed by HHS at **ECF No. 8.** Plaintiff's claims are **DISMISSED WITH PREJUDICE**. The Clerk of Court shall enter Judgment accordingly.

**SO ORDERED**.

At San Juan, Puerto Rico, on this 30th day of September, 2024.

**S/AIDA M. DELGADO-COLÓN**
**United States District Judge**